In re Judith M. BURNS, Debtor.

AT & T UNIVERSAL CARD SERVICES CORP., Plaintiff,

v.

Judith M. BURNS, Defendant.

Bankruptcy No. 95–11618 K.
Adv. No. 95–1225 K.

United States Bankruptcy Court,
W.D. New York.

April 30, 1996.

Timothy N. Maikoff, Solomon and Solomon, P.C., Albany, New York, for Plaintiff.

John Jenny, Buffalo, New York, for Defendant.

MICHAEL J. KAPLAN, Chief Judge.

In the case of *Chemical Bank v. Sigrist (In re Sigrist)*, 163 B.R. 940 (Bankr. W.D.N.Y.1994), this Court held that a creditor that is attempting to carry its burden of proof of credit card fraud under 11 U.S.C. § 523(a)(2)(A) will not be permitted to enjoy the benefits of the evidentiary device of an "inference of fraud" (that might otherwise arise under certain circumstances from a use of the card while insolvent), if the uncontroverted facts in evidence demonstrate that the creditor did not care about the debtor's creditworthiness when it issued the card. One who lacks concern for its borrower's insolvency when enabling the borrowing cannot prove it was defrauded merely by proving that the borrower was insolvent and knew it. And lack of concern for solvency and credit-

worthiness is evident where the creditor issued a pre-approved card to one who was already hopelessly insolvent, without asking for basic credit information. Such a creditor must show actual proof of fraud, such as acts in contemplation of bankruptcy.

■ An awkward procedural posture requires the Court now to address the significance of that holding with regard to a creditor's Motion for Summary Judgment, made upon a record that is silent as to the circumstances under which the credit was issued.

The record before the Court establishes that the Debtor here "had a credit card account" with the creditor, AT & T Universal Card Services Corporation. The Court is not told how long the Debtor had the account, whether she sought it or was solicited to accept it, whether she was asked any information when she accepted it, or whether she was already insolvent when it was issued.

■ In all other regards, however, the creditor's motion makes out a *prima facie* factual case from which fraud may be inferred (as discussed later). Of decisive importance is the additional fact that the Debtor has failed to respond appropriately to the summary judgment motion under Fed. R.Civ.P. 56 and Bankruptcy Rule 7056. The only denial of fraud she has filed in this case is a general denial in the Answer, signed by her attorney. Even in response to the Motion for Summary Judgment, she submits not a word of her own. She submits only what may charitably be deemed to be an "offer of proof" by her attorney—an offer to prove that she thought that she had additional overtime hours available to her (had she wanted them) and had financial assistance from relatives available to her (had she asked for it). If she had done nothing more in response to the motion than to swear or affirm that those resources were on her mind and that was why she thought she could repay AT & T Universal, and that she fully intended to pay them, she would have gotten to trial, for it is almost axiomatic that fraudulent intent is uniquely not susceptible to resolution "on papers."

■ But Rule 56(e) makes it clear that the responding party "may not rest upon the mere ... denials of the ... pleading[s], but the ... response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." The burden of proof never leaves the plaintiff, so she need not have overcome the plaintiff's showing by superior evidence. But, if the plaintiff has made out a *prima facie* case, the defendant must come forward with at least enough to demonstrate a triable issue. It is clear to the present Court that an attorney's "offer of proof" does not suffice to raise a triable issue. Pursuant to Rule 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The present posture, therefore, is not unlike a complete failure to respond to the evidentially well-supported Motion for Summary Judgment. The Debtor has demonstrated no triable issue of material fact though she could have raised one easily by her own affidavit. And if the doctrine espoused in *Sigrist* was applicable she could have placed added evidentiary burdens on the Plaintiff, if she had so informed the Court by placing the circumstances of the card's issuance in the record.

That posture leaves the Court with three questions to answer:

1) Is summary judgment in favor of the creditor under 11 U.S.C. § 523(a)(2)(A) ever permissible "as a matter of law"?

2) Is it permissible when the Court does not know whether the credit card was of the *Sigrist* variety or not?, and

3) Is AT & T Universal entitled to summary judgment here?

■ As to the first question, the answer is in the affirmative. Where, as here, the Debtor has failed to offer any evidence at all, not even just her own sworn statement that she thought she would be able to repay the debts, she has failed to raise a triable issue of fact and summary judgment may be awarded

if the creditor has made a sufficient showing in the record.

Regarding the second issue, *Sigrist* does not establish a new element that must be proven to make out a *prima facie* case. *Sigrist,* by its terms, was a "sufficiency of the evidence" ruling, and nothing more. It offers no gloss on the substantive law of frauds.

In the case of a lender (a credit card issuer) who manifested some interest in the debtor's ability to repay when the credit was made available, it is both logical and rational to "assist" the plaintiff in meeting its burden of proof of fraud, by drawing such an inference.

But I am of the view that such an inference is neither logical nor rational where the lender has extended "pre-approved" credit to an insolvent. To assume that such a lender would suddenly "care" belies the earlier disregard. Hence, the inference is not available to such plaintiff, and the plaintiff must prove fraud or false pretense by other means.

*In re Sigrist,* 163 B.R. at 948 (footnote omitted).

The creditor loses the availability of the inference only when the record is clear that the creditor did not care about the debtor's creditworthiness at the time it issued the card. If that occurred in fact, and if it is not otherwise in the record, then it is up to the debtor to present it to the Court. The mere *possibility* that the facts at bar are like those in *Sigrist,* does not preclude AT & T Universal from a favorable ruling on its motion. There is no burden on the creditor here to prove that the card was not a pre-approved card.

Finally, AT & T Universal is entitled to summary judgment here. That is so not because it has convinced the Court of some type of "profile" of credit card abuse that is patently fraudulent, but because its basic, well-executed showing was uncontradicted by the Debtor and is entitled to application of all inferences traditionally available in fraud cases. To be sure, its Memorandum of Law inexplicably ignores this Court's rulings in *Sigrist* and in *J.C. Penney Co., Inc. v. Shan-*ahan *(In re Shanahan),* 151 B.R. 44 (Bankr. W.D.N.Y.1993), wherein I emphatically rejected the "implied representation" theory of credit card fraud, and AT & T Universal therefore argues the wrong legal basis for entitlement to summary judgment. But the motion is well supported by discovery materials: Answers to Interrogatories, Notices to Admit, and Requests for Production of Documents, all of which leave nothing for trial so long as the Court infers an "intent to defraud" from the totality of circumstances. The Court so infers from the following Statement of Undisputed Facts, quoted from the creditor's motion, and here found to be well-supported by the included record:

## UNDISPUTED FACTS

4. Plaintiff respectfully submits that the following facts are not in dispute.

5. Defendant had a credit card account with Plaintiff. On that account, Defendant obtained cash advances of $490.00 and made merchandise purchases of $1,762.00 a total of $2,252.00 between February 23, 1995 and April 20, 1995. (See Request to Admit No. 4.) As a result of the merchandise purchases and cash advances, Defendant received money and/or property from Plaintiff, and/or the extension, renewal or refinancing of credit from Plaintiff. (See Request to Admit No. 5). As a result of such accesses of credit, Defendant exceeded her credit limit of $7,250.00 by $750.33. (See Request to Admit No. 6). Defendant made no payments on such debt. (See Request to Admit Nos. 9 and 10). At the time Defendant accessed the credit with Plaintiff, she had existing unsecured debt to a variety of creditors in the amount of $54,309.05. (See Request to Admit Nos. 13 through 22) and Debtor's Schedules "D" and "F" which indicated none of the creditors listed in the requests to admit are secured. All of such debt was incurred and outstanding when credit was accessed by Defendant from Plaintiff. Consequently, it is clear that the Defendant had incurred substantial debt at the time the credit was accessed from Plaintiff.

6. From the response to requests to produce, it is clear that Defendants had

substantial monthly payment obligations on her accounts at the time the credit was accessed from Plaintiff. These may be summarized as follows:

| Payment Due | Bill Date | Creditor |
|---|---|---|
| $326.00 | 3/28/95 | J.C. Penney |
| $675.00 | 3/22/95 | Sport Rehab Physical Therapy (overdue and in hands of collection bureau) |
| $228.00 | 4/20/95 | Discover Card |
| $351.97 | 4/6/95 | J.C. Penney National Bank (Mastercard, past due and overlimit). |
| $ 59.63 | 2/24/95 | The Associates |
| $135.00 | 2/23/95 | The Associates |
| $ 35.00 | 3/27/95 | Associates Accounts Management, Inc. (Collection agent for St. Joseph's Hospital) |
| $112.00 | 3/95 | Transamerica Financial Services |
| $ 94.75 | 4/5/95 | Norwest Financial (account shown as delinquent) |
| $115.00 | 4/3/95 | MBNA America (account shown as delinquent, last payment made 12/16/94) |
| $2,132.35 | | Total |

The above clearly shows the Defendant had substantial amounts immediately due during or at the time the debt to Plaintiff was incurred. Such amount is greater than the monthly income listed by Defendant on Schedule "I", even if her monthly expenses of $1,700.00 were not paid. To be sure, the Defendant does not list all of her income on Schedule "I". According to the interrogatory responses to questions "20", "6" and "7", the first of which requests disclosure of income from December 1, 1994 to the date of the petition was filed, the Defendant's income also included unlisted wages from Children's Hospital of $350.00 (net) every two weeks, which comes to about $758.00 monthly. This additional unlisted income does not even approach the amounts necessary for the Defendant to pay her normal monthly living expenses of $1,700.00 (see interrogatory answer number 19) plus the $2,132.35 monthly payment for the debts listed above (which amount does not include the minimum monthly payments for many creditors which have not yet produced their monthly statements to Plaintiff.) It is clear, therefore, that the Defendant did not have the ability to pay both her living expenss [sic] and her unsecured credit lines. Indeed, this is admitted by the Defendant (See Request to Admit No. 23).

7. Moreover, the Defendant purchased $1,037.17 of merchandise on or after March 17, 1995. Those goods were not reasonably acquired for the support or maintenance of the debtor or dependent of the debtor (See Request to Admit No. 24). March 17, 1995 is the 60th day before the Defendant filed her bankruptcy petition. Therefore such debt is presumed non-dischargeable under 11 U.S.C. Section 523(a)(2)(C).

8. As noted above, the Defendant was $750.00 overlimit on his [sic] account with Plaintiff. She was also overlimit on her J.C. Penney National Bank Mastercard account. (See monthly statement annexed to response to production requests).

9. According to the account statements accompanying the response to the production requests, at or about the time the Defendant accessed credit on her account with Plaintiff she was delinquent in the payment of the debt. This included accounts for Sport Rehab Physical Therapy, J.C. Penney National Bank, St. Joseph Hospital, Norwest Financial and MBNA America. More specifically, she was delinquent on at least five (5) of the thirteen (13) unsecured creditors listed on Schedule "F". This number could rise once the outstanding account statements from all creditors are received.

AT & T Universal seeks $2252 plus interest, and may submit an affidavit of amount due, including costs, whereupon the Clerk will enter judgment declaring that amount non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and awarding it as a money judgment.[1]

SO ORDERED.

---

1. Attorneys fees are not to be part of the award. *See American Express Travel Rel. Svcs. Co., Inc. v.*

*King (In re King),* 135 B.R. 734 (Bankr.W.D.N.Y.   1992).