In re Melih Akdogan, Debtor.

AT & T UNIVERSAL CARD SERVICES
CORP., Plaintiff,

v.

Melih AKDOGAN, Defendant.

Bankruptcy No. 195–18940–353.
Adv. No. 196–1135–353.

United States Bankruptcy Court,
E.D. New York.

Jan. 15, 1997.

Teitelbaum, Braverman & Borges P.C., by Leslie Scharf, New Hyde Park, New York, for Plaintiff AT & T Universal Card Services Corp.

Law Office of Richard G. Gertler, L.L.P. by Richard V. Kanter, Garden City, New York, for Debtor.

### DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

### INTRODUCTION

Before the court for decision is defendant's motion for summary judgment in an adversary proceeding commenced by AT & T Universal Card Services Corp. ("AT & T" or "Plaintiff") against the debtor, Melih Akdogan ("Debtor" or "Defendant"), seeking to have the Debtor's debt to it declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The subject debt, in the amount of $7,636.36, arose from the Debtor's use of Plaintiff's unsolicited and pre-approved credit card and included $6,000.00 of obligations incurred by the Debtor a few months before his filing this chapter 7 case. The Debtor contends that Plaintiff cannot prove certain elements essential to its lawsuit, namely, that the Debtor made any misrepresentation to the Plaintiff upon which it relied, thus warranting summary judgment

in his favor pursuant to Fed.R.Civ.P. 56(c). The Debtor also moves for summary judgment on his counterclaim seeking costs and attorney's fees in defense of this lawsuit pursuant to 11 U.S.C. § 523(d), a lawsuit he insists was not "substantially justified". In response, Plaintiff seems to argue that it is entitled to proceed to trial based solely on the issue of the Debtor's intent and that it has otherwise set forth sufficient evidence of those elements of its claim which the Debtor contends are absent.

Upon consideration of the facts before us as well as applicable law, we find the Debtor has set forth a cognizable basis for summary judgment in his favor pursuant to Fed. R.Civ.P. 56(c) with respect to Plaintiff's non-dischargeability lawsuit, to which Plaintiff has failed to adequately respond. Accordingly, and for the reasons set forth below, that portion of his summary judgment motion is granted. However, the Debtor's request for summary judgment with respect to his counterclaim is denied.

### FACTS

The debtor-creditor relationship at issue in this adversary proceeding began in April of 1991, when AT & T informed the Debtor, by mail, that his use of the AT & T Universal Card had been "pre-approved" up to a credit limit of $5,000.00. This mailing by AT & T was unsolicited by the Debtor. According to the transmittal, all the Debtor need do to take advantage of this credit opportunity was provide AT & T with certain minimal information. For the most part the Debtor complied, providing AT & T with his name, annual income ($28,000.00), home and work phone numbers, mother's maiden name and signature.[1] AT & T did not request any information relating to the Debtor's expenses, assets, nature of employment or business, health, home ownership, credit references or general financial condition. On or about September 1, 1991, the Debtor received his AT & T Universal Card (the "Credit Card").

During the next three (3) years the Debtor regularly used the Credit Card, making at least the minimum monthly payments and often paying in full bills amounting to several hundred dollars or more. Again unsolicited, the Debtor's credit limit was increased to $8,500.00 from the original $5,000.00. In or around December of 1994, the Debtor's usage of the Credit Card and payment patterns began to change. Between that time and August of 1995, the Debtor made six (6) purchases with his Credit Card totaling $1,566.00, while at the same time making only minimal payments to the Plaintiff. In August of 1995, the Debtor on two separate occasions requested of the Plaintiff and was granted convenience checks in the amount of $3,000.00 each, virtually exhausting his credit. An additional request that month for a convenience check in the amount of $4,000.00 was denied by AT & T. The Debtor made minimum payments in August and September and filed his chapter 7 case on October 19, 1995. Apart from the request only for the Debtor's income at the time of the issuance of the unsolicited and pre-approved Credit Card, there is no cognizable evidence whatsoever that any inquiry was made by AT & T to establish the creditworthiness or financial condition of the Debtor, either before or at any time after the Credit Card was initially issued. Schedule F, annexed to the Debtor's chapter 7 petition listed unsecured debt of over $70,000.00, consisting entirely and exclusively of credit card debt incurred in the use of eighteen (18) different credit cards.

### THE LAWSUIT AND THE POSITIONS OF THE PARTIES

On January 30, 1996, Plaintiff commenced this adversary proceeding by filing a complaint seeking to have the $7,636.36 debt owing it declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides that:

> the Debtor was able to access this credit is evidenced by the fact that the Debtor received his card despite having failed to provide AT & T with his date of birth and social security number, information that was requested.

---

1. Emblazoned across the top of this mailing in large, bold face type, were the tantalizing words "Yes, I'll Take It. Please send my free AT & T Universal Card ..." *See Affirmation of Richard V. Kanter In Support of Summary Judgment* (*"Kanter Aff."*) at Ex. C. The ease with which

(a) a discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

Typical of the generic allegations contained in AT & T's complaint are that the Debtor incurred the subject debt to Plaintiff with no intent and no realistic future possibility to repay it (Compl. ¶¶ 7, 8), that the Debtor specifically intended to defraud Plaintiff and that the Debtor's actions constituted a material misrepresentation that the charges would be repaid, upon which Plaintiff reasonably relied. (Compl. ¶¶ 5, 9–11). In his answer, filed May 17, 1996, the Debtor admitted incurring the charges at issue, but denied the other essential substantive allegations in the complaint. The Debtor also counterclaimed under 11 U.S.C. § 523(d) for costs and attorney's fees in defending the litigation, claiming the lawsuit was not "substantially justified." (Ans. ¶ 13).[2]

A brief period of discovery ensued during which both sides exchanged documents and interrogatories were served and answered, but Debtor was never deposed. On September 18, 1996, the Debtor moved for summary judgment pursuant to Fed.R.Civ.P. 56, made applicable hereto by Fed.R.Bankr.P. 7056 (the "Summary Judgment Motion").

The Summary Judgment Motion is based on the proposition that Plaintiff cannot prove certain elements necessary to prevail in a nondischargeability lawsuit under § 523(a)(2)(A). First, the Debtor argues that it is undisputed he made no express misrepresentation to Plaintiff and, for various reasons, Plaintiff's theory of implied mis-

representation by the Debtor of intent and/or ability to repay the charges when incurred should be rejected. Further, assuming the court does find that the Debtor made an implied misrepresentation, Debtor contends that Plaintiff's failure to conduct a credit check prior to or after issuing the card, or to otherwise monitor his account, precludes a finding of any reliance thereon, let alone reliance that is justifiable or reasonable.

Plaintiff's opposition to the Summary Judgment Motion is somewhat garbled and difficult to decipher and makes much of the Debtor's intent which, it argues, is an inherently factual issue unsuitable for summary judgment. Plaintiff also takes umbrage with certain of the Debtor's factual assertions, specifically, that Plaintiff never inquired into the Debtor's creditworthiness or otherwise monitored his account.

## DISCUSSION

■ We observe at the outset that there is a dispute between the parties as to what elements are necessary to sustain a credit card nondischargeability lawsuit under § 523(a)(2)(A). However, there can be no dispute as to which party bears the burden of proving those elements. A fundamental objective of bankruptcy law is to provide a fresh start for the honest but unfortunate debtor which is manifested by the general policy of discharge of a debtor's indebtedness. *See Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Accordingly, while certain categories of debt are excepted from discharge (*see* 11 U.S.C. § 523), the burden of proving by a preponderance of the evidence facts constituting such an exception falls on the party alleging it. *Grogan*, 498 U.S. at 283, 287, 111 S.Ct. at 657, 659–60; *see also First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 28 (Bankr.E.D.N.Y.

---

2. Section 523(d) provides as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if

the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

1994); *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 43–44 (Bankr.S.D.N.Y.1992); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 482 (Bankr.S.D.N.Y. 1987). In this case that party is the Plaintiff, AT & T.

This allocation of the underlying burden of proof is crucial to our analysis of the Debtor's Summary Judgment Motion. Fed. R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bankr.P. 7056 provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is **no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.**

Fed.R.Civ.P. (c) (emphasis added). Where, as here, the party moving for summary judgment does not bear the underlying burden of proof, all he need do to properly formulate his motion is demonstrate the absence of evidence with respect to **any** essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). It is then incumbent on the non-moving party to set forth "**specific facts** showing that there is a genuine issue for trial", failing which summary judgment will be granted. Fed.R.Civ.P. 56(e) (emphasis added); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

 In his Summary Judgment Motion, the Debtor contends the Plaintiff cannot establish two essential elements of its claim, misrepresentation and reliance. This contention is grounded in the traditional view of § 523(a)(2)(A) as a fraud provision containing five (5) elements: a misrepresentation by the Debtor; knowing it was false; made with intent to deceive; upon which the creditor relied; to its detriment. *See, e.g., Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986); *Schweig v. Hunter (In re*

*Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986); *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423 (7th Cir.1985); *Union Bank of the Middle East, Ltd. v. Luthra (In re Luthra)*, 182 B.R. 88, 91–92 (E.D.N.Y.1995); *Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983); *Hong Kong Deposit and Guar. Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 51 (S.D.N.Y.1990).

Unfortunately for credit card issuers such as AT & T, applying fraud component concepts like misrepresentation and reliance to § 523(a)(2)(A) nondischargeability actions against credit card holders is problematic. Misrepresentation and reliance in the fraud context are anchored on a direct nexus or relationship between a debtor and a creditor. Here, as in so many other credit card nondischargeability actions, there was little, if anything, in the nature of direct, purposeful contact between the credit card issuer (AT & T) and the credit card holder (the Debtor) either at the inception or over the course of the relationship between the parties. The Credit Card was unsolicited and the "application" by the Debtor was strictly pro forma. Further, the credit card transactions at issue were tripartite in nature involving intermediaries such as merchants or cash advancers with whom the Debtor had direct contact and not with AT & T, the credit card issuer.[3]

While Plaintiff never intelligibly addresses these difficulties, by insisting that it may proceed to trial based solely on the issue of the Debtor's intent, Plaintiff seems to argue the traditional elements of fraud should not be applied to credit-card nondischargeability lawsuits under § 523(a)(2)(A), but instead discarded in favor of some amorphous concept of fraud revolving exclusively around the Debtor's state of mind when he incurred the charges in question. *See, e.g., Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (9th Cir. BAP 1988) (holding the credit card issuer may prevail under § 523(a)(2)(A) simply by showing the debtor made the charges at issue with no intent to pay for them); *Colonial Nat'l Bank*

---

**3.** For the purposes of this decision, we will assume convenience checks are the equivalent of cash advances.

*v. Leventhal (In re Leventhal),* 194 B.R. 26, 30 (Bankr.S.D.N.Y.1996) ("The statutory language of § 523(a)(2)(A) ... focuses on ... the debtor's state of mind."); *J.C. Penney Co. v. Shanahan (In re Shanahan),* 151 B.R. 44, 47–48 (Bankr.W.D.N.Y.1993) ("[D]eciding whether credit card use was fraudulent does not require resort to the so-called 'traditional five elements of fraud' ...."). According to this approach, ascertaining the Debtor's intent when he incurred the charges requires an examination of the "totality of circumstances" surrounding the charges at issue. These circumstances include: the length of time between the charges and the bankruptcy filing; the number of charges and their amount; the debtor's financial sophistication; the financial condition of the debtor at the time of the charges; the nature of the goods purchased (were they luxury items or necessities); the debtor's employment status at the time of the charges; the number of charges in any one day. *See In re Dougherty,* 84 B.R. at 657; *In re Leventhal,* 194 B.R. at 29. As this determination is inherently factual, Plaintiff argues the Debtor's Summary Judgment Motion should be denied.

We agree that a debtor's state of mind has enhanced relevance in § 523(a)(2)(A) credit card nondischargeability lawsuits. We also acknowledge that ascertaining a debtor's state of mind may require an examination of the "totality of circumstances." However, we will not eviscerate from § 523(a)(2)(A) the elements of misrepresentation and reliance simply because their presence is inconvenient.

■ Many courts applying § 523(a)(2)(A) to credit card transactions have required that the plaintiff demonstrate a misrepresentation and reliance, while at the same time making certain modifications to those concepts due to the tripartite nature of such transactions. *See, e.g., Anastas v. American Sav. Bank (In re Anastas),* 94 F.3d 1280, 1286 (9th Cir. 1996) (holding application of § 523(a)(2)(A) to credit card transactions requires an "affirmative misrepresentation" by the debtor and reliance by the creditor); *Manufacturer's Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir.1988); *Colonial Nat'l Bank v. Carrier (In re Carrier),* 181

B.R. 742, 747 (Bankr.S.D.N.Y.1995); *Household Card Services/Visa v. Vermillion (In re Vermillion),* 136 B.R. 225, 226–27 (Bankr. W.D.Mo.1992); *First Deposit Credit Services Corp. v. Preece (In re Preece),* 125 B.R. 474, 476 (Bankr.W.D.Tex.1991). Recent statements by the Supreme Court construing § 523(a)(2)(A) (albeit not in the credit card context) provide strong support for this approach. In *Field v. Mans,* Justice Souter stated:

> If Congress really had wished to bar discharge to a debtor who made unintentional and wholly immaterial misrepresentations having no effect on a creditor's decision, it could have provided that. It would, however, take a very clear provision to convince anyone of anything so odd, and nothing so odd has ever been apparent to the courts that have previously construed this statute, routinely requiring intent, **reliance, and materiality [of a misrepresentation]** before applying § 523(a)(2)(A). (citations omitted)

— U.S. ——, —— - ——, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995) (emphasis added). Indeed, subscription to AT & T's intent-exclusive view of § 523(a)(2)(A) implicates a rejection of Justice Souter's common sense approach to that statute and would enable credit card companies to proceed to trial in virtually every nondischargeability lawsuit thereunder, causing unnecessary harassment of debtors and making their credit card debts "too easily nondischargeable." *In re Ward,* 857 F.2d at 1085 (quoting *In re Carpenter,* 53 B.R. 724, 728 (Bankr. N.D.Ga.1985)). This view would be in direct contravention of the well established principle that exceptions to discharge should be construed narrowly and strictly in favor of the debtor and against the creditor. *See Schweig v. Hunter,* 780 F.2d at 1579; *In re Bodenstein,* 168 B.R. at 27; *In re Boice,* 149 B.R. at 43. Accordingly, we find that to properly rebut the Debtor's Summary Judgment Motion and proceed to trial in this adversary proceeding, AT & T must set forth sufficient specific evidence of a misrepresentation by the Debtor upon which it relied.

■ AT & T asserts that the Debtor may be charged with impliedly representing,

each time he used the Credit Card, that he had the intent and/or ability to repay the resulting indebtedness. There is much support for the proposition that implicit in credit card usage is a representation by the user that he has the intent and/or financial ability, at some point in the future, to pay for the goods, services or cash obtained thereby. *See, e.g., In re Anastas*, 94 F.3d at 1285; *In re Ward*, 857 F.2d at 1085; *In re Carrier*, 181 B.R. at 747; *In re Vermillion*, 136 B.R. at 226–27; *Citicorp Credit Services v. Hinman (In re Hinman)*, 120 B.R. 1018, 1021 (Bankr.D.N.D.1990). However, non-written representations respecting a debtor's financial condition may not form the basis of a nondischargeability lawsuit under § 523(a)(2)(A). *See In re Anastas*, 94 F.3d at 1285; *Eugene Parks Law Corp. v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992); *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 356–57 (S.D.N.Y.1985); *Chemical Bank v. Sigrist (In re Sigrist)*, 163 B.R. 940, 947 (Bankr.W.D.N.Y.1994). Accordingly, for the purposes of determining dischargeability under § 523(A)(2)(a), it is a debtor's *intent* and not *ability* to repay the incurred indebtedness which may be properly inferred from the use of a credit-card.

*See, e.g., In re Anastas*, 94 F.3d at 1285 ("We emphasize that the representation made by the card holder in a credit card transaction is not that he has an *ability* to repay the debt; it is that he has an *intention* to repay."); *Sears Roebuck and Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 755 (Bankr.N.D.Ind. 1986) ("[U]se of the credit card is a statement of a present intention to pay at the time of purchase rather than an unwritten representation of the ability to pay or financial condition."); *In re Carpenter*, 53 B.R. at 730 (holding use of a charge card implies present intention and not present ability to pay).[4]

■ AT & T is correct in that the truth or falsity of this implied representation of a mental state is an inherently factual determination which is not normally amenable to summary judgment. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir.1991); *see also AT & T Universal Card Services Corp. v. Burns (In re Burns)*, 196 B.R. 11, 13 (Bankr.W.D.N.Y.1996) ("[I]t is almost axiomatic that fraudulent intent is uniquely not susceptible to resolution 'on papers'."); *AT & T Universal Card Services Corp. v. Berry (In re Berry)*, 197 B.R. 382,

---

**4.** We recognize that some courts reject entirely the concept of an implied representation. However, most which do so have adopted the "totality of circumstances" approach favored by AT & T here, spurning all notion of adherence to the traditional five elements of fraud. *See, e.g., In re Dougherty*, 84 B.R. at 657; *In re Leventhal*, 194 B.R. at 30; *AT & T Universal Card Services v. Samani (In re Samani)*, 192 B.R. 877, 879 (Bankr.S.D.Tex.1996). As stated above, this is a view of § 523(a)(2)(A) which we decline to adopt.

At least one court requiring adherence to the traditional five elements of fraud in credit card nondischargeability actions under § 523(a)(2)(A) has also completely rejected the implied representation theory. *See AT & T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724, 731–32 (Bankr.N.D.Ill.1996). In *Alvi*, Bankruptcy Judge Ginsberg relied on the Supreme Court case of *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), which held that issuance of a check is *not* an implied representation that there are sufficient funds in a checking account to cover the check. 191 B.R. at 732. Noting the similarities between check and credit card usage and that the Seventh Circuit has held that the *Williams* analysis applies to § 523(a)(2)(A), Judge Ginsberg concluded that "use of a credit card in a credit transaction is

not, per se, a representation." *Id.* We respectfully disagree with this portion of Judge Ginsberg's otherwise coherent and sensible analysis. Requiring adherence to the traditional five elements of fraud in the context of credit card nondischargeability actions under § 523(a)(2)(A), while at the same time precluding application of the implied representation doctrine is, in our view, incongruous. A requirement of an express misrepresentation by a credit holder to a credit card issuer would preclude credit card companies from prevailing in nondischargeability lawsuits under § 523(a)(2)(A) in all but the most remote circumstances and would immunize debtors from egregious and dishonest conduct. In effect, credit card companies would be held to have "assumed the risk" of nonpayment prior to revocation of the account in question. *See First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927, 932 (11th Cir.1983). It should be remembered that the fresh start policy of the Bankruptcy Code is tempered by an equally important objective of preventing the "dishonest debtor's use of the law's protections to shield his or her wrongdoing." *National Bank of Am v. Newmark (In re Newmark)*, 20 B.R. 842, 852 (Bankr. E.D.N.Y.1982). We think it inappropriate to charge credit card companies which have been diligent in extending credit with assuming the risk of nonpayment by a dishonest debtor.

383 (Bankr.M.D.Fl.1996). Thus, the sole remaining basis upon which the Debtor's Summary Judgment Motion may be granted is AT & T's asserted inability to establish the element of reliance.

 To prevail on its nondischargeability lawsuit under § 523(a)(2)(A), AT & T has the burden of proving it *actually* relied on the Debtor's alleged misrepresentation and that such reliance was *justifiable. Field v. Mans,* —— U.S. at ——, 116 S.Ct. at 446; *see also In re Alvi,* 191 B.R. at 730–31. As recently stated by the Supreme Court, "justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans,* —— U.S. at ——, 116 S.Ct. at 444 (quoting the Restatement (Second) of Torts (1976) § 545A, Comment b).

 To establish justifiable reliance on the Debtor's implied (alleged) misrepresentation that he intended to repay the charges at issue here, at the very least AT & T must demonstrate that it conducted a credit check of the Debtor or that circumstances otherwise exist which demonstrate credit was not extended blindly. *See In re Anastas,* 94 F.3d at 1286; *In re Ward,* 857 F.2d at 1085; *Chevy Chase, F.S.B. v. Pressgrove (In re Pressgrove),* 147 B.R. 244, 247 (Bankr.D.Kan. 1992); *The May Company v. Chech (In re Chech),* 96 B.R. 781, 784 (Bankr.N.D.Ohio 1988). *See generally Field v. Mans,* —— U.S. at ——, 116 S.Ct. at 444 ("a [plaintiff] is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him **if he had utilized his opportunity to make a cursory examination or investigation.'**") (quoting the Restatement (Second) of Torts (1976) § 541, Comment a (emphasis added)). Recently, this point was succinctly and we think correctly addressed by Bankruptcy Judge Ginsberg, who stated:

> Passively extending credit hardly constitutes reliance on individual instances of [credit] card usage, nor can this court conceive why such reliance, if it did exist, should always be justifiable. A creditor cannot sit back and do nothing and still

meet the standard for actual and justifiable reliance when it had an opportunity to make an adequate examination or investigation.

*In re Alvi,* 191 B.R. at 731; *see also First Card v. Leonard (In re Leonard),* 158 B.R. 839, 845 (Bankr.D.Colo.1993) ("The lack of due diligence and responsible extension of credit is a bar to the creditor's recovery.").

 The Debtor states that AT & T never conducted any investigation prior to extending credit and was in fact at all times utterly indifferent to his creditworthiness. In response to these assertions, AT & T was required to come forward with specific evidence of conduct on its part which would demonstrate actual and justifiable reliance. AT & T furnished nothing. Ironically, the only "evidence" to this effect was produced by the Debtor and consists of a one page computer printout received by the Debtor from AT & T in response to the Debtor's discovery request for copies of any credit reports. *See Kanter Aff.* at Ex.D. No affidavit or other admissible evidence was submitted on behalf of AT & T indicating that someone, on his or her personal knowledge, conducted any investigation touching upon the Debtor's ability to pay his debts.

AT & T alleges that the computer printout is "a copy of the summary for the credit report which was obtained by the Plaintiff prior to the Plaintiff sending a solicitation to the Defendant." *See Plaintiff's Affirmation in Opposition to the Defendant's Motion for Summary Judgment Dismissing Plaintiff's Complaint ("Affirmation in Opposition")* at ¶ 23. This "summary of a credit report" contains no complete sentences, very few words and to the untrained eye is little more than computer gibberish. AT & T offered no meaningful translation or interpretation other than general, self serving and completely unsupported statements of counsel in its Affirmation in Opposition which were then parroted at oral argument. We suspect AT & T's counsel has no idea what it means. Clearly, this incomprehensible computer printout is hardly a sufficient response to the Debtor's properly supported Summary Judgment Motion. As Judge Kaufman cautioned, "[a] party opposing a motion for summary

judgment simply cannot make a secret of his evidence until trial, for in doing so he risks the possibility that there will be no trial." *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972). The Debtor's position that there is no evidence demonstrating actual or justifiable reliance remains unrebutted and accordingly, summary judgment will be granted on that basis.[5]

▇▇▇ We now address the remaining portion of the Debtor's Summary Judgment Motion relating to his counterclaim for costs and fees in defense of this lawsuit pursuant to 11 U.S.C. § 523(d). In order to recover costs and attorney's fees under § 523(d), the Debtor must prove that: (1) AT & T requested a determination of the dischargeability of a debt; (2) the debt in question was primarily a consumer debt; and (3) the debt was discharged. *See American Sav. Bank v. Harvey (In re Harvey),* 172 B.R. 314, 318 (9th Cir. BAP 1994). Thereafter, the burden shifts to the creditor to prove that its action was substantially justified. *See Id.* (citations omitted). An action is "substantially justified" if it has a reasonable basis in law and fact. *See Id.* at 318–19; *A.L. Lee Memorial Hosp. v. McFadyen (In re McFadyen),* 192 B.R. 328, 334 (Bankr.N.D.N.Y.1996). Regardless, the bankruptcy court has discretion not to award costs and fees "if special circumstances would make the award unjust." 11 U.S.C. § 523(d).

▇▇▇ AT & T fails to directly address in any meaningful way the issue of whether its lawsuit was "substantially justified." However, the Debtor's counterclaim is based almost exclusively on his contention that AT & T was utterly indifferent to his creditworthiness and therefore could not possibly succeed in its efforts to have the subject debt declared nondischargeable under § 523(a)(2)(A). *See Memorandum of Law in Support of Defendant's Motion for Summary Judgment* at 13 ("The most salient flaw in the Plaintiff's action is the complete inability to show reliance, reasonable or otherwise, on the purported implied representations of the Defendant of an ability to repay when the subject charges and cash advances were taken."). A shown above, AT & T's position that nondischargeability lawsuits under § 523(a)(2)(A) revolve exclusively upon the Debtor's intent is not without precedent. Accordingly, while we failed to adopt this view of that statute, it cannot be said that AT & T's lawsuit, although poorly litigated, had no reasonable basis. Thus, the portion of the Debtor's Summary Judgment Motion requesting costs and attorney's fees is denied.

Further, it being determined that the Debtor cannot prevail on his counterclaim, summary judgment on said counterclaim is granted in favor of AT & T. *See Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 ("[D]istrict Courts are widely acknowledged to possess the power to enter summary judgments *sua sponte* …"); *see also Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) ("The prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment *against* the moving party."); *Local 33, Int'l Hod Carriers Bldg. and Common Laborers' Union v. Mason Tenders Dist. Council of Greater N.Y.,* 291 F.2d 496, 505 (2d Cir.1961) (Medina, C.J.) ("[I]t is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had [the non-moving party] made a cross-motion for summary judgment.").

## CONCLUSION

Based on the foregoing, the Debtor's motion seeking summary judgment rejecting AT & T's nondischargeability action under § 523(a)(2)(A) is granted. That portion of the Debtor's motion for summary judgment on his counterclaim seeking costs and attorney's fees pursuant to § 523(d) is denied. Summary judgment on said counterclaim is granted in favor of the Plaintiff, AT & T.

5. AT & T asserts its diligence is evidenced by the fact that it denied the Debtor's access to additional credit over and above his credit limit of $8,500. Standing alone, such action is insufficient to make justifiable AT & T's supposed reliance on the implied representation inherent in charges within his credit limitation. Likewise, AT & T's assertion that it was entitled to rely on the Debtor's good payment history is belied by the fact that for many months he made only the minimum monthly payments.

AN ORDER CONSISTENT WITH THIS DECISION SHALL BE ENTERED SIMULTANEOUSLY HEREWITH.