HOUSEHOLD CREDIT SERVICES, INC., Plaintiff,

v.

John Haywood WALTERS, Angela C. Walters, Defendants.

HOUSEHOLD CREDIT SERVICES, INC., Plaintiff,

v.

Winifred P. DAVIS, Defendant.

Bankruptcy Nos. 96–50613, 96–20434. Adv. Nos. 96–5042, 96–2017.

United States Bankruptcy Court, W.D. Louisiana, Lafayette–Opelousas Division.

May 2, 1997.

D. Patrick Keating, Opelousas, LA, for Household Credit.

Daniel Landry, Lafayette, LA, for John and Angela Walters.

Reuvan Rougeau, Lake Charles, LA, for Winifred Davis.

GERALD H. SCHIFF, Bankruptcy Judge.

## REASONS FOR DECISION

These two adversary proceedings contain virtually identical fact patterns and legal issues, and the court therefore determines that a joint opinion is appropriate.

### JURISDICTION

The court has jurisdiction over each of these proceedings pursuant to the provisions of 28 U.S.C. § 1334. The cases have been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 22.01 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that each case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure ("FRBP").

### JOHN HAYWOOD WALTERS and ANGELA C. WALTERS

On May 1, 1996, John Haywood Walters and Angela C. Walters ("Walters") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and on that day an order for relief was duly entered. This adversary proceeding was commenced by Household Finance Company, Inc. ("HFC"), a creditor of the Walters, who requested a determination of the dischargeability of Walters' debt to HFC in accordance with the provisions of 11 U.S.C. § 523(a)(2)(A).

Trial was held on March 26, 1997. After hearing the evidence and argument of counsel, and upon receiving post trial memorandum, the matter was deemed taken under advisement.

HFC, or its predecessor, issued a credit card to Mrs. Walters on or about October 4, 1992, which was prior to her marriage to Mr. Walters. There were normal charges and payments made on the account over the next several years. The credit limit established by HFC was never exceeded by Mrs. Walters and, until just before bankruptcy, the account was never in default.

The Walters began suffering financial difficulties in mid–1995, soon after Mrs. Walters stopped working in order to care for her newborn son. She testified that she used the HFC card to obtain cash advances in order to meet the living expenses of her family—this included making monthly payments on the HFC card as well as other credit cards.

The schedules filed by the Walters reflect that they owed money on 13 other credit cards in the approximate amount of $44,000.

### WINIFRED P. DAVIS

Winifred P. Davis ("Davis") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, on May 23, 1996, and on that day an order for relief was duly entered. HFC was also a creditor of Davis, and filed an adversary proceeding alleging that her debt to HFC should be held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Trial was held on March 20, 1997. After hearing the evidence and argument of counsel, and upon receiving post trial memorandum, the matter was deemed taken under advisement.

The HFC credit card was issued to Davis on or about February 25, 1995. The card was issued based upon a pre-approved and

unsolicited invitation sent to her by HFC. She made regular monthly payments on the account, usually in excess of the minimum payment due. Her credit limit was not exceeded until a cash advance was made in April of 1996.

She testified that the majority of the charges made on the card were made for the benefit of her two major children and grandchildren. Ms. Davis further testified that she had numerous other credit cards and used them in substantially the same manner in which she used the HFC card. The schedules filed in Davis' bankruptcy proceeding indicate that she owed balances on six other credit cards totaling approximately $31,000.

### DISCUSSION

Section 523(a)(2)(A) provides that a chapter 7 discharge is without effect on a debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ A substantial and uniform body of jurisprudence has established the following as the elements of proof a plaintiff/creditor must adduce in order to satisfy nondischargeability of debt under section 523(a)(2)(A):

(1) the debtor made representations;

(2) at the time they were made, the debtor knew they were false;

(3) the debtor made the representations with the intention and purpose to deceive the creditor;

(4) the creditor relied on such representations; and

(5) the creditor sustained losses as a proximate result of the representations.

*In re Bercier,* 934 F.2d 689 (5th Cir.1991); *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284 (5th Cir.1995).

In section 523(a)(2)(A) cases involving use of credit cards, the jurisprudence suggests that the debtor's misrepresentations occur at one of two points in time—when the card is initially obtained, as in *In re Shaw,* 172 B.R. 665 (Bkrtcy.M.D.Fla.1994), or when the card is used to make charges, as in *In re Anastas,* 94 F.3d 1280 (9th Cir.1996). If the former, the representation must have actually been made. *Matter of Carpenter,* 53 B.R. 724 (Bkrtcy.N.D.Ga.1985). If the latter, however, the representation is deemed to be implied—that is, each time the card is used, the debtor impliedly represents to the issuer that the user intends to pay for the charge and, in addition, has the present ability to make such payment. *In re Hashemi,* 104 F.3d 1122 (9th Cir.1996).

■ Having heard the testimony of Mesdames Walters and Davis, and in light of the current jurisprudence surrounding credit card cases under section 523(a)(2)(A), the court easily concludes that each[1] made implied representations to HFC regarding repayment of the charges as they were being incurred, the representations were knowingly false when made, and that HFC incurred damages as a result thereof.

Unfortunately for HFC, however, proof of conduct on the part of the debtor is a case under section 523(a)(2)(A) is, standing alone, insufficient to carry the day. The statute and the jurisprudence thereunder require plaintiff to prove its reliance upon the debtor's misrepresentations. In these cases, HFC failed to introduce any evidence of such reliance, and no presumption exists which excuses this failure of proof.

Section 523(a)(2)(A) is not only silent with respect to the level of creditor reliance upon the debtor's representations, the statute makes no mention of any requirement of reliance whatsoever. Notwithstanding such silence, however, the Supreme Court held in *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), that section 523(a)(2)(A) requires actual and justifiable reliance by the creditor on the misrepresentation. The Court went on to state that while a reasonable reliance standard is not required under section 523(a)(2)(A), the concept of reasonableness is relevant:

---

**1.** There was no testimony that Mr. Walters used the card at any time.

As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt of reliance in fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not at all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.

—— U.S. at ——, 116 S.Ct. at 446.

■ Consequently, in credit card cases, the plaintiff must establish justifiable reliance upon the debtor's representations when such representation is made, which, as stated above, may occur either when the credit card was issued or when the particular charge was made. This proof, however, must be related to actions and conduct of the plaintiff, not of the defendant.

■ Proof of justifiable reliance on representations made when the card is issued may be satisfied when the plaintiff comes forth with proof of the circumstances surrounding the issuance of the card, such as, the issuer's procedures for reviewing the application, including the method of review of the applicant's creditworthiness. In instances where pre-approved cards are issued, however, card issuers apparently desire to avoid the considerable expense of determining creditworthiness prior to the issuance of the card, and spew the cards out basically upon getting the party's name, address, and some scant information about employment (if any is obtained at all). Issuers obviously have made a business decision regarding credit inquiries at the inception of the relationship.

This decision is surely a function of cost. Depending upon the particular issuer involved, and in addition to charging the vendor some 3% or 4% of each charge, the issuer generally charges interest on unpaid balances anywhere from 15–18%. Until such time as the losses attributable to bankruptcy approach or exceed the cost of determining creditworthiness at time of issuance, the court believes issuers will continue to issue pre-approved cards without any inquiry into the cardholder's ability to repay the charges to be incurred by use of the card. The losses they sustain are merely part of their inventory, just as fresh vegetables are to the grocer—each realizes that part of their inventory will be lost, the grocer to spoilage and the card issuer to bankruptcy. Recognizing this inevitability, each makes sure the price they charge will more than make up for such loss in order to attain the anticipated level of profit. Once their loss experience gets so high that their price must be increased to continually provide their expected profits, the sales method and/or procedures will be adjusted since a price set too high will drive the customer to either another grocery store or another card issuer.

■ Where justifiable reliance is established by the issuer at the inception of the relationship, what must the issuer do in order to prove reliance at the time of each transaction? The answer is simple. If the issuer was justified in relying upon the debtor's creditworthiness at the time the card was issued, a presumption arises that the issuer is justified in continuing to rely thereon throughout the relationship, unless some event occurs, *i.e.,* the debtor exceeds his credit limit, which occurrence would remove the presumption of continued justifiable reliance.

As stated hereinabove, HFC produced no evidence of reliance at the onset of either relationship. In Ms. Davis' case, the card was pre-approved as well as unsolicited. The evidence on this score in the Walters' case is not clear. This being the situation, without establishing reliance at the time the card was issued, HFC has no basis to claim a continuation of the reliance in the future on the occasion of each use of the card.

Counsel for HFC cites two cases which would appear to excuse the card issuer from definitive proof of reliance, namely, *In re Eashai,* 87 F.3d 1082 (9th Cir.1996), and *In re Hashemi,* 104 F.3d 1122 (9th Cir.1996). These cases seem to say that there is a point in time where the conduct of the debtor is so egregious that relief will be granted to the creditor. The statute requires proof of the debtor's conduct and proof of the creditor's conduct. Proof of one does not constitute proof of the other. The balancing of relative

equities approach is not in accordance with the statute as interpreted by the Supreme Court. Accordingly, this court respectfully disagrees with those cases.

 At some point in time, there must be actual and justifiable reliance on the misrepresentation, and the creditor bears the burden of proof with respect to this issue. *Field v. Mans, supra.* The court believes the following language from *In re Akdogan,* 204 B.R. 90, 97 (Bkrtcy.E.D.N.Y.1997), accurately reflects the state of the jurisprudence with respect to the issue of reliance in credit card cases being pursued under section 523(a)(2)(A):

> To prevail on its nondischargeability lawsuit under § 523(a)(2)(A), AT & T has the burden of proving it *actually* relied on the Debtor's alleged misrepresentation and that such reliance was *justifiable. Field v. Mans,* —— U.S. at ——, 116 S.Ct. At 446; *see also In re Alvi,* 191 B.R. [724] at 730–31 [ (Bkrtcy.N.D.Ill.1996) ]. As recently stated by the Supreme Court, "justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans,* —— U.S. at ——, 116 S.Ct. At 444 (quoting the Restatement (Second) of Torts (1976) § 545A, Comment b).

Without producing any evidence of reliance whatsoever, proof of the complaint is deficient. Accordingly, both complaints must be dismissed for a failure of proof of reliance by the creditor upon the misrepresentation made by the debtors.

### ATTORNEYS FEES

Section 523(d) provides that—

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court *shall* grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding *if* the court finds that the position of the creditor was not substantially justified, *except* that the court shall not award such costs and fees if

special circumstances would make the award unjust. (Emphasis added.)

Having heard the testimony of the witnesses, and taking into consideration the amount of credit card debt in each instance, as well as the relatively recent determination by the Supreme Court in *Field v. Mans, supra,* the court determines that an award of fees and costs in these cases would be unjust.

Separate orders in conformity with the foregoing reasons are this day being entered in the record of each of the referenced adversary proceedings.