DUHÉ, Circuit Judge:
AT&T Universal Card Services (“AT&T”) appeals the bankruptcy court’s determination that Constance P. Mercer’s (“Mercer”) credit card debt was discharge-able under 11 U.S.C. § 523(a)(2)(A). We affirm.
I. FACTS AND PROCEEDINGS
We summarize only the facts relevant to our decision which include AT&T’s pre-approval process, and Mercer’s response to AT&T’s pre-approved credit card application. We do not discuss the events after Mercer received the card or her general financial standing. On November 10,1995, AT&T opened Mercer’s credit card account pursuant to a pre-approved credit application mailed to Mercer and signed by her. Although Mercer’s credit limit on this AT&T account was $3,000, within a month she had exceeded this limit by $186.82 through charges and cash advances at automated teller machines (“ATM”).
AT&T relies on third party credit agencies to screen potential applicants. A *216 credit bureau makes an initial screening. These names are then matched against ■AT&T’s own internal risk and scoring models to determine creditworthiness. The names that make this cut are then returned to the credit bureau for a second screening to review any change in credit standing or credit history. These credit bureaus place a risk or FICO score on each name to determine the probability of an account becoming delinquent. AT&T requires a minimum FICO score of 680 before sending out a solicitation offer to a prospective customer. The credit bureau assigned Mercer a FICO score of 735. Under the Fair Credit Reporting Act, AT&T must make a bonafide offer of credit to anyone who passed the screening process.
In September 1995, AT&T mailed Mercer and offer to open a credit card account. Mercer completed, signed, and returned her acceptance. Mercer provided AT&T an income figure of $24,500, a social security number, a date of birth, a home and business phone number, and a maiden name. AT&T then conducted a further review of Mercer’s ability to service a credit line of $3,000. AT&T then sent Mercer on November 10,1995 a card and a cardmember agreement.[1] Mercer then used the account to obtain fourteen cash advances from ATMs, some in casinos. By early December, she had exceeded her credit limit, and AT&T barred her from further use of the account. In all, Mercer carried seven credit cards between March and December 1995.
Mercer filed a petition for bankruptcy relief under Chapter Seven of the Bankruptcy Code. AT&T challenged the dis-chargeability of the debt under Section 523(a)(2)(A). The bankruptcy court concluded that the debt was dischargeable. The court determined that Mercer did not make any representations to AT&T regarding her creditworthiness. Because she had made no representations, AT&T could not meet the reliance requirement to challenge dischargeability under Section 523(a)(2)(A). The district court affirmed the bankruptcy court’s decision. We affirm.
II. STANDARD OF REVIEW
We review the bankruptcy court’s factual findings for clear error and its conclusions of law de novo. Foster Mortgage Corp. v. United Companies Financial Corp., 68 F.3d 914, 917 (5th Cir.1995).
III. DISCUSSION
Section 523(a)(2)(A) of the Bankruptcy Code provides:
A discharge under section 727 ... of this title does not discharge an individual from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretense, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition....
A creditor must prove its claim of nondis-chargeability by a preponderance of the evidence. In order for a debtor’s representation to be a false representation or pretense, a creditor must show that the debtor (1) made a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the creditor; (4) who thereby suffered a loss. RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292-93 (5th Cir.1995). The creditor *217 must show that it actually and justifiably relied on the debtor’s representations. Field v. Mans, 516 U.S. 59, 69-70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).
The bankruptcy court concluded that AT&T did not actually rely on representations by Mercer because Mercer made no representations. AT&T pre-approved the card based solely on its own screening process. The court said, “Mercer never solicited the credit card from AT&T; never knew of nor gave her permission for the investigations; and was never asked about her debts, gambling losses, financial condition, or other credit cards being used by her or the balances thereon.... AT&T solely relied on its own agents and investigative processes to makes its decision.”
The bankruptcy court’s determination is correct. Because AT&T provided Mercer a pre-approved credit card with a pre-approved credit limit, Mercer could not make any false representations AT&T could rely on. Sears, Roebuck and Co. v. Hernandez, 208 B.R. 872, 877 (Bankr.N.D.Tex.1997) (“Passively extending credit in itself is not reliance.”); Household Credit Services, Inc. v. Walters, 208 B.R. 651, 654 (Bankr.W.D.La.1997) (finding no evidence of reliance where crfeditor issued pre-approved credit card).[2] The information Mercer returned to AT&T with her acceptance does not amount to any sort of false representation regarding her intent to pay. AT&T correctly points out that it has no duty to investigate the debtor to show justifiable reliance. See La. Capitol Fed. Credit Union v. Melancon, 223 B.R. 300, 331 (Bankr.M.D.La.1998) citing American Express Travel Related Services Co. Inc. v. Hashemi, 104 F.3d 1122 (9th Cir.1996). However, justifiable reb-anee pre-supposes that the debtor has made a representation. Here Mercer made no representation. Therefore, AT&T neither could have actually nor justifiably relied.
AT&T also contends that the bankruptcy court erroneously concluded that because AT&T did not rely on the debtor’s representations when the card was issued AT&T could not subsequently rely on implied representations made by the debtor with her use of the card. AT&T argues that we should adopt the implied representation theory. Under this theory, the card holder makes a representation that he or she intends to pay each time he or she receives money at an ATM. The money received amounts to a loan from the bank. Melancon, 223 B.R. at 311 (“When the card holder inserts the card into the ATM, he is, in one step, asking for a loan and promising to repay it if it is obtained.”)
This Circuit has not adopted the implied representation theory, and we decline to do so in the pre-approved credit card context. First, although the debtor has borrowed money, the primary decision to extend credit was made before the implied representation. AT&T assumes the risk of any future lending by the debtor. Second, adoption of this theory would improperly shift the burden of proof in Section 523(a)(2)(A) actions. See Hernandez, 208 *218 B.R. at 880. The debtor would essentially become the guarantor of his or her financial condition, and the theory would offend “the balance of bankruptcy policy struck by Section 523.” Chevy Chase Bank v. Briese, 196 B.R. 440, 448 (Bankr.W.D.Wis.1996) citing Matter of Ford, 186 B.R. 312, 317 (Bankr.N.D.Ga.1995). We conclude that we should apply a rule that favors the debtor instead of the creditor at least in the pre-approved credit card context, and we decline to apply the implied representation theory.[3]
Finally, the dissent argues that this holding will only encourage “irresponsible and dishonest debtors to go on unrestrained spending sprees” leading to more consumer bankruptcies and greater costs passed on to all credit card users through higher interest rates. The credit card issuers’ irresponsible lending practices are another part of this problem. In this case, AT&T issued Mercer a pre-approved credit card based on a minimal third-party credit check. If AT&T had merely asked Mercer for information regarding her credit card usage, AT&T may have been more prudent in its lending practices, but AT&T did not.
This holding properly places a greater responsibility on credit card issuers for their lending practices, which have become increasingly irresponsible. According to a recent newspaper article, credit card issuers are “paying more attention to high-risk groups, such as households with proven debt problems and younger consumers. Some issuers are even targeting high-school students.” Scott Kilman, Credit-Card Come-Ons Met by Disinterest, Wall St. J., March 23, 2000, at A2. This holding properly favors the debtor instead of the creditor, and will hopefully encourage more responsible lending practices by credit card issuers.
For these reasons, we affirm.
AFFIRMED.

. The agreement became effective when Mercer used the card or the account. The agreement states that a card holder is "responsible for all amounts owned on [the card holder’s] [ajccount ... and [the card holder] agree[s] to pay such amounts according to the terms of the [agreement.” Regarding purchases and cash advances, the agreement says a card holder may use the card to "obtain a loan from [the card holder's] [a]ccount, by presenting it to any institution that accepts the [c]ard for that purpose, or to make a withdrawal of cash at an automated teller machine (ATM). Both of these transactions are treated as 'Cash Advance' on [the card holder’s] [account.” AT&T also may limit these cash advances.

. Several other courts have determined that a creditor cannot show actual and justifiable reliance when it issued a pre-approved credit card. AT&T Universal Card Services v. Ellingsworth, 212 B.R. 326, 338 (Bankr.W.D.Mo.1997) ("[A] creditor cannot justifiably rely on any representation, or the absence thereof, made by a card holder if the card was pre-approved, and no direct financial information was obtained by the issuer.”); AT&T Universal Card Services Corp. v. Arroyo, 205 B.R. 984, 986 (Bankr.S.D.Fla.1997) (concluding that creditor failed to meet burden of proof under Section 523(a)(2)(A) because of failure to investigate creditworthiness of debtor prior to pre-approval); AT&T Universal Card Services Corp. v. Akdogan, 204 B.R. 90, 97 (Bankr.E.D.N.Y.1997) (determining that creditor must at least conduct a credit check in order to show justifiable reliance); AT&T Universal Card Services and FCC National Bank v. Alvi, 191 B.R. 724, 731 (Bankr.N.D.Ill.1996) ("A creditor cannot sit back and do nothing and still meet the standard for actual and justifiable reliance when it had an opportunity to make an adequate examination or investigation.”)

. Meiancon dealt with credit card debt that was not the result of pre-approval by the creditor.