In re Scott CACCIATORE, Debtor.

F.C.C. NATIONAL BANK, Plaintiff,

v.

Scott CACCIATORE, Defendant.

Bankruptcy No. 96–17211–575.
Adversary No. 96–1742–575.

United States Bankruptcy Court,
E.D. New York.

June 18, 1997.

Hanna & Vlahakis by Derrick Hanna, Brooklyn, NY, for Defendant.

Robert S. Cooper, Rochester, NY, for Plaintiff.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAURA TAYLOR SWAIN, Bankruptcy Judge.

### INTRODUCTION

Before the court for decision is the motion for summary judgment of Scott Cacciatore ("Defendant"), the debtor in this Chapter 7 case and the defendant in this adversary proceeding commenced by FCC National Bank ("FCC"). FCC, which issued a credit card to defendant, seeks a determination that approximately $5,000 in debt incurred by Defendant on the card through telephonic transactions with the Off Track Betting organization ("OTB") is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Court heard argument on Defendant's motion on February 27, 1997 and has considered carefully all of the parties' affidavits and other submissions. For the reasons set forth below, Defendant's motion for summary judgment is granted to the extent the motion is directed to FCC's contention that Defendant's credit card debt is nondischargeable.[1] Defendant's motion is denied to the extent that it seeks an award of attorney's fees pursuant to Fed. R. Bankr.P. 9011 and 11 U.S.C. § 523(d).

The Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 157(a), 157(b)(2)(I) and 1334 and the Order of reference dated August 28, 1986, of the United States District Court for the Eastern District of New York (Weinstein, C.J.). Venue is properly laid in this district under 28 U.S.C. § 1409.

### BACKGROUND

The following facts are undisputed. The parties' debtor-creditor relationship was initiated in April 1996, when FCC sent a "Gold MasterCard Invitation" (the "Invitation") to the Defendant, inviting him to accept a $5,000 "Pre-approved Credit Line."[2] FCC had obtained Defendant's name, along with those of others, from an unspecified third-party source and had forwarded it to an unspecified credit bureau for a check of certain credit criteria specified by FCC prior to issuing the Invitation to Defendant. According to an affidavit submitted by FCC, its list of criteria "includes but is not limited to: an absence of certain derogatory credit information (such as delinquencies on accounts, bankruptcies, judgments, tax liens, civil suits, alias names), and no red flags existing as to any type of fraudulent conduct."[3] Defendant's name survived this screening, and was among the "higher scoring" names on the list. Those "higher scoring" names were sent invitations to open credit accounts.[4]

Defendant received the Invitation, which called for Defendant to provide certain information, specifically his social security number, date of birth, home phone number, employer, employer's address, and business phone number, along with his signature. Defendant signed the Invitation and, in the space provided for identification of the applicant's employer, wrote "STUDENT (New York University)." The space provided for the applicant's business phone number was left blank. Defendant entered his social security number, birth date (7/19/75) and home telephone number in the appropriate blanks, and returned the Invitation to FCC.[5]

In accordance with its procedures, FCC then "check[ed] ... [Defendant's] credit bu-

---

1. Defendant's motion, which is not a model of clarity, sought in the alternative an order dismissing the complaint pursuant to Fed.R.Civ.P. 9 and Fed. R. Bankr.P. 7009(b) for plaintiff's alleged failure to plead fraud with particularity. In light of the Court's consideration of matters outside the pleadings in connection with Defendant's summary judgment motion and the Court's disposition of that branch of the motion, the Court need not, and does not, rule on this alternative request for relief.

2. FCC's counsel stipulated at oral argument that a copy of the Invitation, annexed as Exhibit A to Defendant's Statement of Facts Pursuant to Local Rule 22(b) ("Exhibit A"), was a true copy of the Invitation issued to, and returned to FCC by, Defendant.

3. Affidavit of Sloan Harrington, dated February 26, 1997 ("Harrington Aff.").

4. *Id.*

5. *Exhibit A.*

reau report to verify that no public record negative reports (such as a bankruptcy or a judgment) ha[d] been reported between the time that the credit bureau ... checked this individual and the time the invitation [was] accepted and returned. (The credit bureau report of [Defendant] was reviewed by F.C.C. National Bank prior to opening [his] account on April 25, 1996, and no such negative information had occurred between the previous credit bureau check and April 25, 1996)." [6] There is no evidence that FCC even considered checking to determine whether Defendant was employed or had other financial resources before it issued him a card.

Defendant began to use the FCC card in May 1996. In slightly over three weeks— between May 7 and May 29, 1996—Defendant took twelve cash advances totaling $5,293.00. All of these charges were apparently made by telephoning gambling bets in to OTB, and they are the subject of FCC's nondischargeability complaint. Defendant made a single payment of $300 on the card, in that same month.[7]

Defendant was an undergraduate student on medical leave from New York University ("NYU"), living with his parents, at the time the card was issued and the charges were made.[8] Defendant contends that he was unemployed during this period and that, in April and May of 1996, he began "compulsively gambling" by calling in bets to OTB. Defendant also contends that he believed he would win sufficient money to repay the charges "and also to support himself for the rest of his life." According to Defendant, his parents learned of his outstanding credit card debt in June 1996, and had him consult at that time with both a psychotherapist and a bankruptcy attorney.[9] Defendant's Chapter 7 bankruptcy petition was filed on July 29, 1996.

FCC disputes Defendant's contention that the evidence submitted in support of Defendant's motion establishes that Defendant was a compulsive gambler and that Defendant intended to repay the charges. The Court agrees that the medical information annexed to Defendant's papers is inconclusive and that, if Defendant's medical condition or subjective intent to repay were material to the determination of this motion, summary judgment would be inappropriate and further discovery would be in order. Defendant contends, however, that because FCC failed to investigate Defendant's employment and outstanding debt status when it opened the account, FCC has no basis for asserting justifiable reliance on any conduct of Defendant. As explained below, the Court finds that summary judgment is appropriate at this juncture because FCC's own submissions make it clear that FCC did not rely justifiably on any false or fraudulent conduct on Defendant's part, express or implied, in extending the credit at issue here. Under these circumstances, Defendant's state of mind (in both the medical and the legal senses) is immaterial.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides in pertinent part that summary judgment in favor of a moving party

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

■ "[T]he plain language of Rule 56(c) mandates the entry of summary judgment,

---

**6.** Harrington Aff.

**7.** The charges appeared on Defendant's FCC card billing statements as "COMCHEK*NYC OTB DIAL–A" or "CASH ADVANCE–COMCHEK*NYC OTB DIAL–A." *See* Defendant's Memorandum in Support of Motion for Summary Judgment, sworn to by Scott Cacciatore January 27, 1997 ("Def.Memo") at Exhibit B.

OTB is an entity that provides opportunities for gambling on the results of sporting events.

**8.** Defendant began a medical leave of absence from NYU on or about February 28, 1996, following complaints of depression. *See* Def. Memo and exhibits thereto.

**9.** Def. Memo at ¶ 3.

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Rule 56 permits a court to consider the entire record and does not limit a court's review to that portion highlighted by the motion. *See Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996); *Wonder–Bowl Properties v. Kim,* 161 B.R. 831, 838 (9th Cir. BAP 1993).

Section 523(a)(2)(A) of the Bankruptcy Code provides, in pertinent part, that

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A).

■ The policies underlying the Bankruptcy Code require that exceptions to discharge be construed strictly against creditors and in favor of a fresh start for honest but unfortunate debtors. *See, e.g., AT & T Universal Card Services v. Alvi,* 191 B.R. 724 (Bankr.N.D.Ill.1996); *AT & T Universal Card Services v. Feld,* 203 B.R. 360 (Bankr. E.D.Pa.1996); *Chevy Chase Bank, FSB v. Briese,* 196 B.R. 440, 445 (Bankr.W.D.Wis. 1996). In an action under section 523(a)(2)(A) of the Bankruptcy Code, the creditor has the burden of establishing nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279,

286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ The issue of nondischargeability under section 523(a)(2)(A) is determined under standards traditionally associated with an action for fraud under common law. *See Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *AT & T Universal Card Services Corp. v. Akdogan,* 204 B.R. 90, 94 (Bankr.E.D.N.Y.1997); *Feld,* 203 B.R. at 363.[10] Under these standards, a plaintiff must establish that it relied to its detriment on a material misrepresentation that was intentionally made. *Field,* —— U.S. at —— ——, 116 S.Ct. at 442–43. The test is generally articulated as a five-part one, requiring that the plaintiff prove: (1) that the debtor made false representations; (2) that at the time they were made the debtor knew they were false; (3) that the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *See Anastas v. American Savings Bank,* 94 F.3d 1280, 1284 (9th Cir.1996); *Akdogan,* 204 B.R. at 94; *Feld,* 203 B.R. at 365. Proof of each element by a preponderance of the evidence is essential to a successful showing that a given debt is nondischargeable. See *Grogan,* 498 U.S. at 291, 111 S.Ct. at 661; *Feld,* 203 B.R. at 365.

■ The application of section 523(a)(2)(A) in the credit card debt context is somewhat difficult given the nature of a typical credit card transaction, which involves no face to face contact with a lender. Because of the disjunction between debtor and creditor in this transactional context, some courts have dispensed with the element of reliance in applying common-law fraud standards to nondischargeability claims under section 523(a)(2)(A) involving credit card debt, focusing instead on the debtor's intent and representations (actual or implied).[11] This Court

---

10. *See also Alvi,* 191 B.R. at 728 (most courts treat false pretenses, false representation and actual fraud under a single test).

11. *See, e.g., Citibank South Dakota v. Dougherty,* 84 B.R. 653, 657 (9th Cir. BAP 1988) (holding

that the credit card issuer may prevail simply by showing the debtor made the charges at issue with no intent to pay for them); *Colonial Nat'l Bank v. Leventhal,* 194 B.R. 26, 30 (Bankr. S.D.N.Y.1996) ("The statutory language of

declines to adopt that line of reasoning and will not ignore the element of reliance simply because it may be difficult for credit card companies to prove.

■ The gravamen of a cause of action sounding in fraud is the notion that the complaining party has been induced to action or inaction by, and suffered some loss by reason of, the allegedly fraudulent conduct. The reliance inquiry—whether the complaining party's actions had anything to do with the debtor's allegedly fraudulent conduct, and whether the complaining party's response to that conduct was justifiable—is central to these issues. If the complaining party acted without regard to the alleged fraud, or if the reliance was unjustifiable, a fraud-based cause of action cannot be sustained. *See Field,* — U.S. at — — —, 116 S.Ct. at 442–43. *See also Akdogan,* 204 B.R. at 95.

FCC asserts that: Defendant secured the subject cash advances (i.e., placed the telephone bets) at a time when he was unable to meet his existing financial obligations as they became due; Defendant impliedly represented that he was able and/or that he intended to repay the debt at the time the charges were made; at the time Defendant received the cash advances he intended to deceive FCC in that he either lacked the intention to repay the debt or knew or should have known that he had no ability to repay the debt; and that FCC justifiably relied upon Defendant's false representations to its detriment.[12] FCC contends that its reliance on Defendant's implied representations was justifiable because no "red flags" were raised, either during its initial credit checks or during the course of Defendant's use of the card, and that FCC was not required to make further inquiry into Defendant's creditworthiness.[13]

Defendant denies that he made any representation to FCC as to his intent or ability to repay and points out that Defendant informed FCC that he was a student before FCC issued the credit card to him. At oral argument, focusing on FCC's evidence regarding its credit-approval procedures, Defendant contended that the limited scope of those procedures and the information Defendant provided to FCC regarding his student status preclude any finding of justifiable reliance by FCC on any alleged misrepresentations by Defendant. Defendant asserts, correctly, that if either the issue of intent or that of reliance can be resolved in his favor at this juncture as a matter of law, his summary judgment motion may properly be granted.

As explained below, FCC's own evidence and admissions demonstrate that FCC cannot carry its burden of proof on the crucial issue of justifiable reliance. Thus, no disputed issue of material fact precludes resolution of this matter on summary judgment and, because Defendant is entitled to judgment as a matter of law, the court will grant summary judgment in Defendant's favor.

### Representations and Deceit

FCC does not contend that Defendant made any actual representations to it in connection with the OTB transactions. Rather, FCC urges on the Court the notion, accepted by a large number (if not the majority) of courts that have considered the applicability of section 523(a)(2)(A) to credit card transactions, that use of a credit card constitutes an implicit representation to the card issuer. Courts have variously held that such use is an implied representation that the holder has the intent and/or the ability to pay the issuer for the charged purchases and advances. *See, e.g., Anastas,* 94 F.3d at 1285 (representation of intent to repay); *Akdogan,* 204 B.R. at 96 (representation of intent to repay); *Briese,* 196 B.R. at 450–51 (representation of intent to repay); *Colonial Nat'l Bank v. Carrier,* 181 B.R. 742, 747 (Bankr.S.D.N.Y. 1995) (representation of intent and ability to pay); *First Card Services v. Flynn,* 184 B.R. 8, 9 (Bankr.E.D.N.Y.1995) (representation of

§ 523(a)(2)(A) ... focuses on ... the debtor's state of mind."); *J.C. Penney Co. v. Shanahan,* 151 B.R. 44, 47–48 (Bankr.W.D.N.Y.1993) ("[D]eciding whether credit card use was fraudulent does not require resort to the so-called 'traditional five elements of fraud' ...").

**12.** Complaint at ¶¶ 8–12.

**13.** *See* Plaintiff's Affidavit In Opposition To Defendant's Motion For Summary Judgment, dated February 21, 1997.

intent and ability to repay); *Chevy Chase, F.S.B. v. Pressgrove,* 147 B.R. 244, 247 (Bankr.D.Kan.1992) (representation of intent and ability to repay); *Household Card Services/Visa v. Vermillion,* 136 B.R. 225 (Bankr.W.D.Mo.1992) (representation of intent and ability to repay).

■ The Court rejects, as inconsistent with the plain language of section 523, the proposition that credit card users make an implicit representation that is significant in the context of a nondischargeability analysis as to their *ability* to pay at the time they use their cards. Sections 523(a)(2)(A) and 523(a)(2)(B) clearly preclude reliance on unwritten representations respecting a debtor's financial condition as a basis for nondischargeability under section 523(a)(2)(A). A nondischargeability cause of action based on representations regarding the defendant's financial condition (*e.g.,* the defendant's ability to pay) must be brought under section 523(a)(2)(B), which provides for such a cause of action based on material *written* misrepresentations only. *Cf. Field,* — U.S. at —, 116 S.Ct. at 441; *Anastas,* 94 F.3d at 1285; *Akdogan,* 204 B.R. at 96.

■ For purposes of this motion, the Court will assume that each use of Defendant's FCC credit card for his OTB transactions constituted an implied representation that Defendant *intended* to repay the charge, either at once or in installments in accordance with the credit card agreement. As noted above, Defendant asserts that he actually did have such an intent. FCC counters that Defendant's objective inability to pay at the time establishes as a matter of law that Defendant's implied representation was false and that it was made with the intent to deceive.[14] The Court rejects this extension of the "implicit representation" theory. To hold, as some courts have, that objective

inability to pay, coupled with an implicit representation to the contrary at the time the card is used, establishes the deceit element of the nondischargeability cause of action would be to make the debtor a guarantor of his own financial condition. Such a burden is not imposed by the statute.[15]

■ There is thus a genuine issue of fact with respect to Defendant's intent to repay. While Defendant's intent is to be determined by a subjective analysis, objective factors, such as his financial condition at the time the charges were made and his actions after making the charges, and other factors such as his mental condition, would be relevant to a Court's determination as to the credibility of Defendant's assertions regarding his repayment intentions in the event this issue were to be tried. *Cf. Anastas,* 94 F.3d at 1286; *Briese,* 196 B.R. at 451–452.

■ On a motion for summary judgment, the facts and circumstances must be viewed in a light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Lendino v. Trans Union Credit Information Co.,* 970 F.2d 1110, 1112 (2d Cir.1992); *United States Lines, Inc. v. American Steamship Owners Mut. Protection and Indemnity Assoc.,* 169 B.R. 804, 811 (Bankr.S.D.N.Y.1994). The Court therefore will assume for purposes of this summary judgment motion that Defendant did not actually intend to repay FCC at the time he charged his bets and that he impliedly misrepresented his intent, in order to deceive FCC, when he made the OTB charges. *See GM Card v. Cox,* 182 B.R. 626, 628–29 (Bankr.D.Mass.1995).

*Reliance*

■ The Supreme Court has made it clear that section 523(a)(2)(A) requires a

14. Plaintiff's Attorney's Affidavit in Opposition to Defendant's Motion for Summary Judgment and/or Motion to Dismiss, dated February 21, 1997 at ¶¶ 26–28.

15. As the Ninth Circuit has observed,
[T]he focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often would there be an unfounded judgment of non-dischargeability of credit card debt. Rather the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt....
*Anastas,* 94 F.3d at 1285–1286.

demonstration of "justifiable reliance" on the debtor's fraudulent conduct:

> [B]oth actual and 'justifiable' reliance are required.... The Restatement [ (Second) of Torts (1976) ] expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'

*Field,* —— U.S. at ——, 116 S.Ct. at 444 (citations omitted). Although, in *Field,* the Court rejected case law imposing upon the creditor a duty to investigate in the absence of circumstances arousing suspicion, it recognized that reliance is not always justifiable:

> A person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'

*Id.* (quoting Restatement (Second) of Torts (1976) § 541, comment a). The justifiability of the plaintiff's reliance is to be determined by a subjective analysis, taking into account the "qualities and characteristics of the particular plaintiff, and the circumstances of the particular case." *Id.*

Applying these concepts to the dischargeability of credit card debt, courts have held justifiable extensions of credit where the attendant circumstances, apparent to the creditor at the time of issuance and during the course of the holder's use of the card, do not send up any "red flags." Thus, following an unremarkable initial credit check, the holder's subsequent payment of the minimum charges and maintenance of the account within credit limits, a creditor's reliance on the cardholder's implied representation of intent to repay will generally be held justifiable. *See, e.g., Anastas,* 94 F.3d at 1286; *Feld,* 203 B.R. at 370; *Briese,* 196 B.R. at 454.

Seizing upon the term "red flags" as if it were a talisman, FCC argues here that it justifiably relied on Defendant's implicit misrepresentation because neither FCC's credit checks prior to issuing the card nor Defendant's use of the card raised any "red flags".[16] The trouble with FCC's argument is that FCC defined its own, minimal, set of red flags for credit approval purposes and ignored a large "red flag" on the face of Defendant's completed Invitation. The Court holds that the credit approval procedures employed by FCC in this case were too cursory to provide FCC with a basis for justifiable reliance on implicit representations in connection with Defendant's use of the card.

Defendant responded to FCC's Invitation to accept a $5,000 line of credit by informing FCC (1) that he wanted the credit and (2) that he was a 21–year–old student. He listed no employer nor any business telephone number. Notwithstanding this information, and without further inquiry as to whether Defendant was employed or had any resources that might enable him to repay $5,000 in charges in accordance with FCC's credit terms, FCC chose to give Defendant a $5,000 pre-approved line of credit based on the absence of prior bankruptcies, assumed names and the like in Defendant's history.

■ FCC's credit criteria, as detailed in the Harrington Affidavit, all focus on whether an applicant has previously had serious financial difficulties or has been caught in fraudulent or irresponsible behavior. If no such issues have come to light, FCC does not attempt to make an independent assessment of whether a person is likely to be able to fulfill his obligations under the credit card agreement. While this sort of risk taking may well be commercially reasonable, and indeed profitable,[17] the Court holds that such

---

**16.** *E.g.,* Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment at ¶ 6.H.

**17.** As the Hon. Michael J. Kaplan stated in *Chemical Bank v. Sigrist,* 163 B.R. 940, 948 (Bankr.W.D.N.Y.1994),

> That is a matter of business judgment with which this court has no proper concern. Such

a lender's claim to repayment is just as strong as that of a pre-insolvency lender that meticulously inquired and satisfied itself of the debtor's creditworthiness. But the [commercial] reasonableness or unreasonableness of the lender's decision is totally irrelevant to its effort to establish that it was defrauded and that

a minimal credit investigation is an insufficient basis for a finding of justifiable reliance in this case. Defendant's indication on the Invitation that he was a student should have made plain the questionability of any implicit representation that he intended to repay extensions of credit of the magnitude made available to him through FCC's card. Defendant's lack of resources "would [have been] patent to [FCC] if [it] had utilized [its] opportunity to make a cursory examination or investigation" of Defendant's employment status or assets. *Cf. Field*, —— U.S. at ——, 116 S.Ct. at 444. The information Defendant provided to FCC, coupled with FCC's failure to make relevant inquiries based on that information, renders unjustifiable any reliance by FCC on an implicit misrepresentation of Defendant's intent to pay. "A plaintiff may not recover for fraud if he ignores a known or obvious risk." *Briese*, 196 B.R. at 454. FCC clearly ignored such a risk.[18]

Furthermore, Defendant's repeated use of his new card for gambling within a short period of time, up to and beyond the limit of his available credit, apparently raised nary an eyebrow at FCC, even though Defendant had never used the card before and FCC had not obtained any information about Defen-

dant's resources. "Passively extending credit hardly constitutes reliance on individual instances of card usage, nor can this Court conceive why such reliance, if it did exist, should always be justifiable. A creditor cannot sit back and do nothing and still meet the standard for actual and justifiable reliance when it had an opportunity to make an adequate examination or investigation." *Alvi*, 191 B.R. at 731. *See also Feld*, 203 B.R. at 370.

In light of FCC's failure to pursue the explicit warning signs presented by Defendant's completed credit card Invitation and his use of the card, the Court finds that any reliance on Defendant's alleged implicit misrepresentation as to his intention to repay the charges was unjustifiable. Because FCC cannot under these circumstances prove by a preponderance of the evidence each of the elements required for a finding of nondischargeability under section 523(a)(2)(A), Defendant's motion for summary judgment is granted.[19]

### Costs and Attorneys' Fees

■■■■■ The portion of Defendant's summary judgment motion requesting costs and

---

it is entitled to a judgment of nondischarge under 11 U.S.C. § 523(a)(2)(A).

**18.** Citing *National Union Fire Ins. v. Bonnanzio,* 91 F.3d 296 (2d Cir.1996), FCC argues, based on the Second Circuit's statement in that case that "reasonable reliance" under section 523(a)(2)(B) (relating to false written financial statements) "cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith," that the justifiable reliance standard requires only a minimal showing. *Bonnanzio,* 91 F.3d at 305. If such a "low threshold" applies in a reasonable reliance context, FCC reasons, the threshold showing for justifiable reliance must be imperceptible. Such a reading of *Bonnanzio* is plainly inconsistent with the elements of the justifiable reliance standard as articulated by the Supreme Court in *Field v. Mans, supra.* Information available to the creditor clearly matters, as do the actions, if any, of the creditor in making appropriate inquiries to follow up on information that may suggest reliance would *not* be justifiable in a particular case. The *Bonnanzio* court's focus on a creditor's "bad faith" reliance in the section 523(a)(2)(B) context is consistent both with the nature of section 523(a)(2)(B) cases (which must by definition be based on actual, materially false, *written* misrepresentations re-

garding a debtor's financial condition rather than implicit representations as to subjective intent), and with the legislative history of the statutory provision, which shows that Congress was concerned about creditors that discouraged debtors from making full and accurate disclosures of their credit histories on credit applications and then cited omissions or inaccuracies in those documents in subsequent nondischargeability proceedings. *See Field,* —— U.S. at ——, 116 S.Ct. at 447; *Bonnanzio,* 91 F.3d at 305.

**19.** FCC asserted at oral argument that unspecified factual issues requiring trial exist as to FCC's account supervision and screening procedures. FCC has misapprehended its burden in opposing Defendant's motion for summary judgment. "A party opposing a motion for summary judgment simply cannot make a secret of his evidence until trial, for in so doing he risks the possibility that there will be no trial." *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972). FCC submitted two affidavits detailing its procedures for opening new accounts and the credit checks undertaken in connection with the Invitation issued to Defendant. The court has considered this evidence and has concluded that the undisputed facts preclude any finding of justifiable reliance in this case.

attorney's fees under 11 U.S.C. § 523(d) is denied.

Section 523(d) provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The creditor can defeat a motion under this provision by establishing that its nondischargeability action was substantially justified in that it had a reasonable basis in law and fact or that there existed special circumstances. *See American Savings Bank v. Harvey,* 172 B.R. 314, 318 (9th Cir. BAP 1994).

Defendant simply asserts that FCC "... does not have a reasonable basis in truth for the few facts alleged nor is there a reasonable connection between the facts alleged and the legal theory advanced."[20]  As noted above, a variety of overlapping theories have emerged in respect of the elements required of a credit card plaintiff to obtain a judgment of nondischargeability as well as the manner in which those elements may be satisfied. The papers submitted by FCC in opposition to plaintiff's motion cite authority tending to support some of its arguments. In the absence of prior rulings on point by this court, or binding Second Circuit authority, the Court cannot conclude that FCC's position lacked substantial justification within the meaning of section 523(d). Accordingly, Defendant's motion is denied to the extent it seeks an award of attorney's fees and summary judgment is granted in favor of FCC in respect of Defendant's counterclaim for attorney's fees and costs pursuant to section 523(d).[21]  *See Celotex Corp. v. Catrett,* 477

U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Ramsey v. Coughlin,* 94 F.3d 71, 73 (2d Cir.1996).

### CONCLUSION

Defendant's summary judgment motion is granted to the extent the motion is directed to FCC's contention that Defendant's credit card debt is nondischargeable. Defendant's motion is denied to the extent it seeks an award of attorney's fees pursuant to section 523(d) and Fed. R. Bankr.P. 9011. Summary judgment is granted in favor of FCC with respect to Defendant's counterclaim requesting attorney's fees and costs. The court will enter an order consistent with this opinion.

---

**20.** Def. Memo at ¶ 10.

**21.** Defendant's motion requests attorney's fees pursuant to Fed. R. Bankr.P. 9011 as well as under section 523(d). Defendant makes no argument and cites no legal or factual basis for an

award of fees pursuant to Rule 9011. For this reason, and in light of the Court's analysis of the section 523(d) branch of Defendant's motion, the request for an award of attorney's fees pursuant to Rule 9011 is also denied.