**Linda DOS SANTOS, Appellant,**

v.

**Peter GOULART, Appellee.**

**No. 99 Civ. 0510(BDP).**

United States District Court, S.D. New York.

May 7, 1999.

Stephen B. Selbst, McDermott, Will & Emery, New York City, for appellant.

Leon A. Lauterbach, Lauterbach and Garfinkel, LLP, Yonkers, NY, for appellee.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Appellant Linda Dos Santos appeals an order of the Bankruptcy Court (Judge Adlai S. Hardin, Jr.) which determined that her indebtedness to her brother, Appellee Peter Goulart, arising from a note made by Dos Santos securing a purchase money mortgage on the home of their now deceased mother was nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it had been obtained under false pretenses. For the reasons that follow, the order is affirmed.

Dos Santos, the Chapter 7 debtor, is the sole daughter of Violet Goulart, and Peter Goulart, suing individually and in his capacity as executor of Violet Goulart's estate, is her sole son. Prior to 1986, Violet Goulart held clear title to a three-family house at 380 Somerville Place, Yonkers, New York. Linda and her husband Manuel Dos Santos, and their children lived in one apartment, and Violet and Peter Goulart lived in another apartment. Violet Goulart was medically disabled, had no regular income, and suffered from numer-

ous health problems. In order to generate extra income, she, with the assistance of her two children, took steps to transfer her residence, which was her principal asset, to her daughter, subject to a mortgage and life estate in favor of Violet Goulart. At that time Violet Goulart also executed a Will leaving her estate—including the mortgage—to Peter. The purpose of the transaction was, in effect, to split the value of her single asset between her two children. Consequently, Dos Santos took title to the house subject to a mortgage for half its value and Violet Goulart and Peter continued to reside there rent free.

To effectuate this plan, in July 1996, Linda Dos Santos prepared and her mother executed the following the documents: a Deed conveying the property from her mother to herself; a Mortgage Note in the amount of $72,300 (half the appraised value of the home) payable by Linda Dos Santos to her mother; and a Will under which Violet Goulart left all of her estate to her son Peter. Paragraph 20 of the Mortgage provided "this is a purchase money first mortgage and is intended to be recorded simultaneously with the deed executed herein." The Deed was recorded in July 1986 but the mortgage was never recorded.

Thereafter, Linda Dos Santos and her husband subsequently remortgaged and refinanced the house several times with various financial institutions without revealing and, indeed, falsely concealing the existence of the unrecorded first mortgage. Eventually the additional indebtedness placed on the house by the Dos Santos totaled approximately $200,000. Mr. Dos Santos invested these proceeds in various of his business activities. The Dos Santos made approximately 30 mortgage payments to Violet Goulart totaling about $20,000, and also made repairs and renovations to the house. As Mr. Dos Santos' business interests deteriorated, he and his wife stopped making mortgage payments

to her mother and concentrated on meeting other financial obligations.

In February 1995, Violet Goulart died. Thereafter, Peter Goulart, as executor of her estate, commenced an action in Supreme Court, New York County, against the Dos Santos claiming fraud as a consequence of Linda Dos Santos' failure to record the first mortgage and recovered a judgment in the amount of $99,230. Thereafter, the Dos Santos filed a Chapter 7 Petition on March 31, 1998 and Peter Goulart commenced proceedings under §§ 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code to establish the nondischargeability of the Dos Santos' debt to him.[1]

The matter was tried to the Bankruptcy Court on November 29, 1998. At trial both parties agreed that the New York's Dead Man Statute (C.P.L.R. § 4519) applied through Federal Rule of Evidence 601. This concession served to limit Linda Dos Santos' ability to testify based on unwitnessed conversations and "understandings" with her mother that the transaction in question was other than what the documentation indicated. After having an opportunity to hear the parties, assess their credibility, and review the evidence, the Court held that Linda Dos Santos would be denied a discharge under § 523(a)(2)(A) for the debts in question because she had obtained her mother's property through false pretenses, i.e., she had promised to record, but did not record, the mortgage— a step that would have protected her brother's priority vis-a-vis subsequent mortgagees.

Specifically the Bankruptcy Court found that Dos Santos acted intentionally. Its findings of false pretenses were, according to the Court, based on:

> (1) the clear, explicit and entirely comprehensive structure of the transaction that the mother's property was to be divided equally,

**1.** The appellee's claim against Manuel Dos Santos was denied by the Bankruptcy Court,

thus Linda Dos Santos is the only party to this appeal.

(2) the unambiguous type written provision entered into the document by Linda Dos Santos stating that the mortgage and the deed should have been recorded simultaneously,

(3) the fact that within days of the execution of the documents, the deed was recorded, but the mortgage was not, and

(4) the fact that Linda Dos Santos testified that she consciously did not inform the subsequent mortgage brokers of the existence of the Violet Goulart mortgage, thus indicating that it was not an oversight, but intentional conduct, and that she obtained mortgage financing that substantially exceeded the appraised valuation of the house.

Moreover, the Bankruptcy Court rejected Dos Santos' argument that the language of paragraph 20 was "boiler plate" of the type typically included in mortgages. The Court concluded that there was no evidence for this proposition and, in any event, the language of paragraph 20 was not part of the printed form, but had been typed onto the form. The Bankruptcy Court also stated that the fact that Peter and Violet Goulart executed a subordination agreement for one of the mortgages was not probative of the question of whether they knew Violet Goulart's mortgage had never been recorded. Accordingly, the Bankruptcy Court denied Dos Santos a discharge for the note her brother inherited and this appeal followed.

### DISCUSSION

■ Under 28 U.S.C. § 158(a), (c) the District Court is authorized to exercise appellate jurisdiction over final orders of the Bankruptcy Court. *See* Fed. R.Bank.P. Rule 7052 (incorporating Fed. R.Civ.P. Rule 52). This Court reviews the Bankruptcy Court Findings of Fact under the clearly erroneous standard and conclusions of law *de novo.*

Dos Santos offers two grounds for reversal. The first is that there was insufficient evidence for the Bankruptcy Court's conclusion that she possessed fraudulent intent and second, that the Bankruptcy Court erred in excluding evidence under the Dead Man's Statute. Neither contention has merit.

■ Here, the conclusions of the Bankruptcy Court were based on testimony by witnesses the court was able to observe and evaluate. Judge Hardin's conclusions concerning fraudulent intent find substantial support in the record and have not been demonstrated to be clearly erroneous. *In re Bonnanzio,* 91 F.3d 296, 301–302 (2d Cir.1996) (holding that intent to deceive under § 523(a)(2)(B) is an issue of fact to be reviewed for clear error); *In re Shaheen,* 111 B.R. 48, 52–53 (S.D.N.Y. 1990) (where intent is at issue, the debtor's credibility is a substantial factor and the bankruptcy court's assessment thereof is entitled to great deference).

■ Nor did the Court err in its application of the New York Dead Man's Statute. As previously noted, both parties agreed that it applied. The Dead Man's Statute is a state rule of competency and thus, under Fed.R.Evid. 601, applies in federal courts, where, as here, the rule of decision is provided by state law. The dispute before the Bankruptcy Court concerned whether or not Dos Santos' debt would be dischargeable under § 523(a)(2)(A) which provides in part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an . extension, renewal, or refinancing of credit, to the extent *obtained by* —

(A) *false pretenses, a false representation, or actual fraud. . . .*

Section 523(a)(2)(A) (emphasis added). Thus, the legal determination of whether the Dos Santos obtained by "false pretenses, a false representation or actual fraud" any property from Violet Goulart was the critical question before the Bankruptcy Court. This question is determined by state law. In *Field v. Mans,* 516 U.S.

59, 71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) the Supreme Court emphasized that § 523(a)(2)(A) incorporates "the general common law of torts, the dominant consensus of common law jurisdictions, rather than the law of any particular state." Thus, the Bankruptcy Court correctly applied the Dead Man's Statute to limit Dos Santos' testimony concerning transactions with her deceased mother.

The appellant's contention that during the trial the executor waived the protection of the Dead Man's Statute is not supported by the record. *See In re Estate of Wood,* 52 N.Y.2d 139, 144, 436 N.Y.S.2d 850, 418 N.E.2d 365 (1981) (protection of the Dead Man's Statute is waived when the executor is examined in his own behalf, the testimony of the deceased is given in evidence, or the executor questions his adversary as to the personal transaction with the decedent). Peter Goulart did not testify at the trial or cause any other interested party to testify as to the personal transaction with Violet Goulart. Further, any answers by Dos Santos elicited on cross-examination that may have gone to the transaction were timely objected to by Goulart's attorney as nonresponsive. The order of the Bankruptcy Court is affirmed.

**SO ORDERED.**